William L. Larkins, Jr. WSBA #33423
wlarkins@larkinsvacura.com
Julie R. Vacura, WSBA #34588
jvacura@larkinsvacura.com
Larkins Vacura, LLP
621 SW Morrison St., Suite 1450
Portland, Oregon 97205
Telephone: 503-222-4424
Facsimile: 503-827-7600

Attorneys for Receiver,
Michael Grassmueck





09-CV-05380-ORD

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON, TACOMA DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

MCS PROGRAMS, LLC, a Washington
Limited Liability Company, also doing business
as Mutual Consolidated Savings; UNITED
SAVINGS CENTER, INC., a Washington
corporation, also doing business as Mutual
Consolidated Savings; USC PROGRAMS,
LLC, a Washington Limited Liability Company,
also doing business as Mutual Consolidated
Savings; PAUL MORRIS THOMPSON,
individually and as an officer of MCS Programs,
LLC, United Savings Center, Inc., and USC
Programs, LLC; and MIRANDA CAVENDER,
individually and as a manager of MCS
Programs, LLC, United Savings Center, Inc.,
and USC Programs, LLC,

    Defendants.

Civil No. C09-5380RBL

STIPULATION AND ORDER

This Stipulation is entered into as of the 31st day of December, 2009 by Michael

Grassmueck, the court-appointed equity receiver in this action ("Receiver") and CardFlex, Inc., a

California corporation ("CardFlex").

Stipulation and Order                                                                         Page 1

## Recitals

A. The Receiver was appointed and granted enumerated and general powers of a federal equity receiver in that certain "Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, Immediate Access to Business Premises, Limited Expedited Discovery, and Order to Show Cause Why a Preliminary Injunction Should Not Issue" entered by the court on June 26, 2009, and by that certain "Stipulated Preliminary Injunction and Order for Other Equitable Relief" entered by the court on July 13, 2009 (collectively, "the Receiver Order").

B. Before the commencement of this action and the entry of the Receiver Order, CardFlex provided merchant credit card processing services to one or more of the following entities that were placed into receivership by the Receiver Order: MCS Programs, LLC, United Savings Center, Inc., and USC Programs, LLC, all of which did business under the name "Mutual Consolidated Savings," and all of which will be referred to collectively in this Stipulation as "MCS/USC."

C. In connection with providing services to MCS/USC, CardFlex required MCS/USC to provide and maintain certain dollar reserves, which were intended to provide CardFlex a source of funds from which it could be reimbursed if CardFlex were presented with valid "chargebacks" resulting from honoring demands for cancellation or reimbursement of credit card charges incurred by customers of MCS/USC prior to the effective date of the Receiver Order.

D. As of the date of this Stipulation, CardFlex holds $471,003.25 in reserves that are subject to the Receiver's powers under the Receiver Order. CardFlex holds $120,172.84 of the funds, Wells Fargo Bank, N.A. the balance of $350,830.41.

E. The Receiver has notified CardFlex that all of the reserves are property of the Receivership estate and may be disposed of only with the consent of the Receiver and/or an Order of this court. CardFlex has notified the Receiver that CardFlex seeks reimbursement for monies it has spent honoring chargebacks since the effective date of the Receiver Order. Both the Receiver and CardFlex wish to have as much of the money currently held in reserve released as soon as possible, while each retains the rights and interests each may have in whatever funds continue to be held in reserve.

## TERMS OF STIPULATION

NOW, THEREFORE, in light of the above Recitals, the truth of which the Receiver and CardFlex acknowledge, the Receiver and CardFlex stipulate and agree as follows:

1. Upon the signing of this Agreement, CardFlex will immediately deliver to the
2. Receiver, by wire transfer, $250,000.00 from the reserves.
3. Upon the signing of this Agreement, CardFlex may transfer to itself from the reserves held by CardFlex $117,839.12 to reimburse itself for chargebacks already honored since the effective date of the Receiver Order.
4. The balance of the reserves, $103,164.13, will continue to be held at Wells Fargo Bank, N.A. until December 31, 2009, and will remain subject to the provisions of the Receiver Order.
5. As soon after December 31, 2009 as practicable, CardFlex will provide the Receiver substantiation, to the Receiver's satisfaction, in the good faith exercise of his discretion, of chargeback expenditures incurred by CardFlex which were not reimbursed through the $103,164.13 referred to in paragraph 2, above, and which were not otherwise reimbursed. Upon the Receiver's being reasonably satisfied that

the additional chargebacks are legitimate, the total of these additional chargebacks will be released to CardFlex. Simultaneously, CardFlex will deliver to the Receiver, by wire transfer, the entire remaining balance of funds held in reserve.

6. By virtue of this Stipulation, the processing and evaluation of all chargebacks related to MCS/USC which are presented to CardFlex after December 31, 2009 shall be the responsibility of the Receiver, and in the absence of grossly negligent or willfully wrongful actions or omissions on the part of CardFlex, CardFlex shall be relieved of responsibility for all such chargebacks. Effective January 1, 2010, CardFlex will direct to the Receiver all chargebacks initiated by customers of MCS/USC, and all persons claiming a chargeback shall be informed by the Receiver of their right to file a claim pursuant to a claims process that will have been developed jointly by the Receiver and the Federal Trade Commission, subject to the court's supervision and approval. Notwithstanding the preceding provisions in this paragraph, in the event CardFlex incurs chargeback expenses after January 1, 2010, it shall be entitled to file a claim through the court-approved claims process to seek reimbursement.

7. Wells Fargo Bank, N.A. may rely on this Stipulation and will not be liable for releasing any of the reserve funds to CardFlex, the Receiver or the court if in releasing the funds Wells Fargo Bank was acting in good faith in reliance on this Stipulation.

8. In the event of any dispute over the meaning or effect of this Stipulation, either of the parties hereto, and any depository institution which is holding any of the reserves, may seek the assistance of the court in providing interpretation or direction without

having to file a formal motion, so long as the other party or parties are simultaneously notified that the court's assistance is being sought.

9. In the event either party incurs legal expenses in enforcing his or its rights under this Stipulation, the party who prevails before the court may petition the court for an award of his or its attorneys fees and costs against the other party or parties.

10. CardFlex and the Receiver each have had the opportunity to review and discuss this Stipulation with their respective attorneys and advisors before entering into it.

IT IS SO STIPULATED:

CARDFLEX, INC., a California corporation
By: _____
Printed Name: Andrew M. Phillips
Title: President

Date of Signature: December 15, 2009


MICHAEL GRASSMUECK, RECEIVER
_____

Date of signature: December 31, 2009

## ORDER

Based on the foregoing Stipulation, it is hereby ORDERED that the receivership estate funds described therein shall be managed and disbursed as set forth in the terms of the Stipulation.

Dated: 1-7-10 , ~~2009~~ 2010

_____
United States District Judge