1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

MCS PROGRAMS, LLC, *et al.*,

Defendants.

Civil No.  C09-5380RBL

**STIPULATED FINAL JUDGMENT
AND ORDER FOR
PERMANENT INJUNCTION**

On June 25, 2009, Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed its Complaint to secure temporary, preliminary and permanent injunctive and other equitable relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, for Defendants' acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in connection with the marketing and sale of debt reduction products and services.  The next day, the Court entered a Temporary Restraining Order ("TRO"), which appointed a Receiver for the Corporate Defendants and enjoined Defendants from, among other things, misrepresenting their products and services, violating the TSR, and disposing of their assets.  On July 2, 2009, the TRO was extended by stipulation of all parties, and on July 13, a Stipulated Preliminary Injunction was entered as to all parties.

**STIPULATED FINAL JUDGMENT & PERMANENT INJUNCTION**

1    Plaintiff FTC and Defendants MCS Programs, LLC, United Savings Center, Inc., USC

2   Programs, LLC, and Paul Morris Thompson, represented by the attorneys named below, and

3   Defendant Miranda Lynn Cavender, *pro se*, have agreed to entry of this Stipulated Final Judgment and

4   Order for Permanent Injunction ("Order").

5    **NOW, THEREFORE**, Plaintiff Federal Trade Commission and Defendants MCS Programs,

6   LLC, United Savings Center, Inc., USC Programs, LLC, Paul Morris Thompson, and Miranda Lynn

7   Cavender, having requested the Court to enter this Order,

8    **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

9    **FINDINGS**

10    1.    This Court has jurisdiction over the subject matter and the parties.

11    2.    Venue is proper in the Western District of Washington.

12    3.    The activities of Defendants are or were in or affecting commerce, as defined in

13   Section 4 of the FTC Act, 15 U.S.C. § 44.

14    4.    Defendants are telemarketers or sellers for purposes of the TSR.

15    5.     The Complaint states a claim upon which relief may be granted against all Defendants

16   under Sections 5(a), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b; and under the

17   TSR, 16 C.F.R. Part 310.

18    6.    All Defendants have agreed that this Order does not entitle Defendants to seek or

19   obtain attorneys' fees as a prevailing party.  Defendants waive any claim that they may have held

20   under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to

21   the date of this Order.  Each settling party shall bear its own costs and attorneys' fees.

22    7.    This Order is in addition to, and not in lieu of, any other civil or criminal remedies that

23   may be provided by law.

24    8.    Plaintiff and Defendants waive all rights to seek appellate review or otherwise

25   challenge or contest the validity of this Order. Defendants further waive and release any claim they

26   may have against the Commission, its employees, agents, and representatives arising out of this action

27   and under the terms of this Order.

28

**STIPULATED FINAL JUDGMENT & PERMANENT INJUNCTION**

9.     Defendants waive their share of any and all claims to the assets of MCS Programs, LLC, United Savings Center, Inc., and USC Programs, LLC, including any assets currently in possession of the Receiver, and further stipulate that their share of any of these assets are to be transferred to the FTC to be used for equitable relief, as described in Section VI.

10.     Entry of this Order is in the public interest.

11.     This Order is for settlement purposes only, and does not constitute and shall not be interpreted to constitute an admission by Defendants or a finding that the law has been violated as alleged in the Complaint, or that the facts alleged in the Complaint, other than the jurisdictional facts, are true.

12.     Defendants have entered into this Order freely and without coercion.  Defendants acknowledge that they have read the provisions of this Order, understand them, and are prepared to abide by them.

## **DEFINITIONS**

For the purpose of this Order, the following definitions shall apply:

1.     "**Asset**" and "**Assets**" mean any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.     "**Assisting others**" includes, but is not limited to: (a) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (b) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material, including, but not limited to, the text of any Internet website, email, or other electronic communication; (c) providing names of, or assisting in the generation of, potential customers; (d) performing or providing marketing or billing services of any kind; (e) acting as an owner, officer, director, manager, or principal of a business entity; or (f) providing telemarketing services.

FEDERAL TRADE COMMISSION
915 Second Ave., Su. 2896
Seattle, Washington 98174
(206) 220-6350

3.      "**Caller identification service**" means a service that allows a telephone subscriber to have the telephone number and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

4.      "**Cavender Financial Statements**" means the individual financial statements and accompanying documentation of Miranda Lynn Cavender, signed and dated July 2009, and provided to the FTC shortly thereafter.

5.      "**Charitable contribution**" means any donation or gift of money or any other thing of value.

6.      "**Clear and conspicuous**" or "**clearly and conspicuously**" means:

    a.   in print communications, the message shall be in a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend it, in print that contrasts with the background against which it appears;

    b.   in communications disseminated orally, the message shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it;

    c.   in communications made through an electronic medium (such as television, video, radio, and interactive media such as the Internet, online services, and software), the message shall be presented simultaneously in both the audio and visual portions of the communication.  In any communication presented solely through visual or audio means, the message may be made through the same means in which the communication is presented.  In any communication disseminated by means of an interactive electronic medium such as software, Internet, or online services, a disclosure must be unavoidable and presented prior to the consumer incurring any financial obligation.  Any audio message shall be delivered in a volume and cadence sufficient for any ordinary consumer to hear and comprehend it.  Any visual message shall be of a size and shade, with a degree of contrast to the background against which it appears, and shall appear

on the screen for a duration and in a location sufficiently noticeable for an ordinary consumer to read and comprehend it; and

d.      regardless of the medium used to disseminate it, the message shall be in understandable language and syntax.  Nothing contrary to, inconsistent with, or in mitigation of the message shall be used in any communication.

7.      "**Credit**" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

8.      "**Debt relief good or service**" means any good, service, plan, or program, including debt management plans, debt settlement, debt negotiation, and for-profit credit counseling, represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more unsecured creditors, servicers, or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor, servicer, or debt collector.

9.      "**Defendants**" means all of the Corporate Defendants and the Individual Defendants, individually, collectively, or in any combination.  "**Corporate Defendants**" or "**Receivership Defendants**," means MCS Programs, LLC, and USC Programs, LLC, Washington limited liability companies, and United Savings Center, Inc., a Washington corporation, and their successors and assigns.  "**Individual  Defendants**" means Paul Morris Thompson and Miranda Lynn Cavender, individually and as officers of the Corporate Defendants.

10.     "**Defendants' financial disclosures**" means, collectively, the Thompson Financial Statements and the Cavender Financial Statements.

11.     "**Document**" or "**Documents**" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and encompasses both paper documents and electronically stored information, including writings, drawings, graphs, charts, photographs, audio and video recordings, images, and other data compilations from which information can be obtained directly or, if necessary, after translation by Defendant into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

12. "**Established business relationship**" means a relationship between a seller and a consumer based on: (a) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or (b) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

13. "**Federal homeowner relief or financial stability program**" means any program (including its sponsoring agencies, telephone numbers, and Internet websites) operated or endorsed by the United States government to provide relief to homeowners or stabilize the economy, including but not limited to (a) the Making Home Affordable Program; (b) the Financial Stability Plan; (c) the Troubled Asset Relief Program and any other program sponsored or operated by the United States Department of the Treasury; (d) the HOPE for Homeowners program, any program operated or created pursuant to the Helping Families Save Their Homes Act, and any other program sponsored or operated by the Federal Housing Administration; or (e) any program sponsored or operated by the United States Department of Housing and Urban Development ("HUD"), the HOPE NOW Alliance, the Homeownership Preservation Foundation, or any other HUD-approved housing counseling agency.

14. "**Financial related good or service**" means any good, service, plan, or program that is represented, expressly or by implication, to (a) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards; (b) improve, or arrange to improve, any consumer's credit record, credit history, or credit rating; (c) provide advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating; (d) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit; (e) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, debt relief goods or services; (f) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving any good or service represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more secured creditors, servicers, or debt collectors.

15.  "**For-profit**" means any activity organized to carry on business for the profit of the entity engaging in the activity or that of its members.

16.  "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

17.  "**Mortgage loan modification** or **foreclosure relief service**" means any good, service, plan, or program that is represented, expressly or by implication, to assist a consumer in any manner to (a) stop, prevent, or postpone any home mortgage or deed of trust foreclosure sale; (b) obtain or arrange a modification of any term of a home loan, deed of trust, or mortgage; (c) obtain any forbearance from any mortgage loan holder or servicer; (d) exercise any right of reinstatement of any mortgage loan; (e) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the owner of property sold at foreclosure may cure his or her default or reinstate his or her obligation; (f) obtain any waiver of an acceleration clause contained in any promissory note or contract secured by a deed of trust or mortgage on a residence in foreclosure or contained in that deed of trust; (g) obtain a loan or advance of funds that is connected to the consumer's home ownership; (h) avoid or ameliorate the impairment of the consumer's credit record, credit history, or credit rating that is connected to the consumer's home ownership; (i) save the consumer's residence from foreclosure; (j) assist the consumer in obtaining proceeds from the foreclosure sale of the consumer's residence; (k) obtain or arrange a pre-foreclosure sale, short sale, or deed-in-lieu of foreclosure; (l) obtain or arrange a refinancing, recapitalization, or reinstatement of a home loan, deed of trust, or mortgage; (m) audit or examine a consumer's mortgage or home loan application; or (n) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the renter of property sold at foreclosure may continue to occupy the property.  The foregoing shall include any manner of claimed assistance, including, but not limited to, debt, credit, budget, or financial counseling; receiving money for the purpose of distributing it to creditors; contacting creditors or servicers on behalf of the consumer; and giving advice of any kind with respect to filing for bankruptcy.

18.  "**National Do Not Call Registry**" means the National Do Not Call Registry, which is the "do-not-call" registry maintained by the FTC pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

19.   "**Outbound telephone call**" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

20.   "**Person**" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

21.   "**Receiver**" means Michael A. Grassmueck and Grassmueck Group.

22.   "**Representatives**" means Defendants' successors, assigns, officers, agents, servants, employees and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise.

23.   "**Seller**" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration whether or not such person is under the jurisdiction of the Commission.

24.   "**Servicer**" means any beneficiary, mortgagee, trustee, loan servicer, loan holder, or other entity that performs loan or credit account administration or processing services and/or its authorized agents.

25.   "**Telemarketer**" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

26.   "**Telemarketing**" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call.  Telemarketing does not include catalog solicitations defined by 16 C.F.R. § 310.2(cc) or any other act or practices exempt by 16 C.F.R. § 310.6.

27.   "**Telemarketing Sales Rule**," "**TSR**," or "**Rule**" means the FTC Rule entitled "Telemarketing Sales Rule," 16 C.F.R. § 310, attached hereto as Appendix A or as it may hereafter be amended.

28.   "**Thompson Financial Statements**" means the individual financial statement of Paul Morris Thompson, executed by him on July 20, 2009, and submitted, with accompanying documentation, on July 21, 2009, together with revisions and amendments (1) to Items 7, 12, and 31, submitted on July 22, 2009, (2) to Item 26, submitted on August 5, 2009, and (3) to Items 12, 21, and

22, submitted on May 26, 2010, and together with copies of various account records submitted in November 2009 and January 2010.

## <u>ORDER</u>

### CONDUCT PROHIBITIONS

#### I.  Permanent Ban on Marketing Debt Relief Goods or Services

**IT IS THEREFORE ORDERED** that Defendants, whether acting directly or through any other person, are hereby permanently restrained and enjoined from:

A.    Advertising, marketing, promoting, offering for sale, or selling any debt relief good or service; and

B.    Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any debt relief good or service.

Nothing in this Order shall be construed as an exception to this Section I.

#### II.  Prohibited Misrepresentations Relating to Financial Related Goods or Services

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale or sale of any financial related good or service, are hereby permanently restrained and enjoined from:

A.    Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

1.    The terms or rates that are available for any loan or other extension of credit, including but not limited to:

a.    closing costs or other fees;

b.    the payment schedule, the monthly payment amount(s), or other payment terms, or whether there is a balloon payment; interest rate(s), annual percentage rate(s), or finance charge; the loan amount, the amount of

1                      credit, the draw amount, or outstanding balance; the loan term, the draw

2                      period, or maturity; or any other term of credit;

3         c.       the savings associated with the credit;

4         d.       the amount of cash to be disbursed to the borrower out of the proceeds, or

5                      the amount of cash to be disbursed on behalf of the borrower to any third

6                      parties;

7         e.       whether the payment of the minimum amount specified each month

8                      covers both interest and principal, and whether the credit has or can result

9                      in negative amortization;

10        f.       that the credit does not have a prepayment penalty or that no prepayment

11                      penalty or other fees or costs will be incurred if the consumer

12                      subsequently refinances; and

13        g.       that the interest rate(s) or annual percentage rate(s) are fixed rather than

14                      adjustable or adjustable rather than fixed;

15     2.       That any person can improve any consumer's credit record, credit history, or

16            credit rating by permanently removing negative information from the consumer's

17            credit record, credit history, or credit rating, even where such information is

18            accurate and not obsolete;

19     3.       Any person's ability to improve or otherwise affect a consumer's credit record,

20            credit history, or credit rating or ability to obtain credit;

21     4.       Any aspect of any mortgage loan modification service or foreclosure relief

22            service, including but not limited to, the amount of savings a consumer will

23            receive from purchasing, using, or enrolling in such mortgage loan modification

24            service or foreclosure relief service; the amount of time before a consumer will

25            receive a mortgage loan modification or relief from foreclosure; the likelihood

26            that a consumer will obtain a modified mortgage loan or relief from foreclosure;

27            or the reduction or cessation of collection calls; and

28     5.       That a consumer will receive legal representation; and

**STIPULATED FINAL JUDGMENT & PERMANENT INJUNCTION**

B.     Advertising or assisting others in advertising credit terms other than those terms that actually are or will be arranged or offered by a creditor or lender.

### III.  Prohibited Practices Relating to Any Goods or Services

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale or sale of any good or service, are hereby permanently restrained and enjoined from:

A.     Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

1.     Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including, but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

2.     That any person is affiliated with, endorsed or approved by, or otherwise connected to any other person, government entity, any federal homeowner relief or financial stability program, or any other program;

3.     The total costs to purchase, receive, or use, and the quantity of, the good or service;

4.     Any material restriction, limitation, or condition to purchase, receive, or use the good or service; and

5.     Any material aspect of the performance, efficacy, nature, or characteristics of the good or service.

B.     Failing to disclose truthfully, in a clear and conspicuous manner, before consumers provide their credit or debit card account numbers or any other billing information:

1.     The amount, frequency, and duration of any payments;

2.  The total cost to purchase, receive, or use, and the quantity of, any goods or services that are subject of the sales offer, including by failing to disclose to consumers, if true, that the cost quoted is in the currency of a country other than the one in which the consumer resides; and

3.  Any policy of not making refunds or cancellations or, if Defendants make a representation about a refund or cancellation policy, all material terms and conditions of any such policy.

### IV.  Prohibitions Against Deceptive or Abusive Telemarketing Acts or Practices

**IT IS FURTHER ORDERED** that, in connection with telemarketing, Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device are hereby permanently restrained and enjoined from violating, causing others to violate, or assisting others who violate, any provision of the TSR, including, but not limited to:

### Deceptive Telemarketing Acts or Practices Violating Section 310.3

A.  16 C.F.R. § 310.3(a)(1)(i), by failing to disclose truthfully, in a clear and conspicuous manner, before a customer pays for goods or services offered, the total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer, including the total costs in the customer's local currency;

B.  16 C.F.R. § 310.3(a)(1)(iii), by failing to disclose, in a clear and conspicuous manner, before a customer pays for goods or services offered, if the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

C.  16 C.F.R. § 310.3(a)(2)(iii), by misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

D.  16 C.F.R. § 310.3(a)(4), by making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution;

E.  16 C.F.R. § 310.3(b), by providing substantial assistance or support to any seller or telemarketer while knowing or consciously avoiding knowing that the seller or telemarketer is engaged in any act or practice that violates 16 C.F.R. §§ 310.3(a), (c) or (d), or § 310.4.

**Abusive Telemarketing Acts or Practices Violating Section 310.4**

F.  16 C.F.R. § 310.4(b)(1)(iii)(B), by initiating any outbound telephone call to any person at a telephone number on the National Do Not Call Registry unless the seller proves:

1.  the seller has obtained the express agreement, in writing, of such person to place calls to that person.  Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature of that person; or

2.  the seller has an established business relationship with such person and that person has not previously stated that he or she does not wish to receive outbound telephone calls made by or on behalf of the seller;

G.  16 C.F.R. § 310.4(b)(1)(iii)(A), by initiating any outbound telephone call to a person when that person has previously stated that he or she does not wish to receive an outbound telephone call made by or on behalf of either the seller whose goods or services are being offered, or made by or on behalf of the charitable organization for which a charitable contribution is being solicited;

H.  16 C.F.R. §§ 310.4(d)(1), (2) and (3), by failing to disclose truthfully, promptly and in a clear and conspicuous manner the identity of the seller, that the purpose of the call is to sell goods or services, and the nature of the goods or services;

I.  16 C.F.R. § 310.4(a)(7), by failing to transmit or cause to be transmitted to any caller identification service in use by a recipient of a telemarketing call: (i) the telephone number of the telemarketer making the call, or the telephone number for customer

service of the seller on whose behalf the call is made; and (ii) when made available by the telemarketer's carrier, the name of the telemarketer or seller to any caller identification service in use by a recipient of a telemarketing call; and

J.    16 C.F.R. § 310.4(b)(1)(v), by initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in 16 C.F.R. § 310.4(b)(4)(iii), unless:

    1.    prior to making any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

        a.    the seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

        b.    the seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

        c.    evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

        d.    includes such person's telephone number and signature; and

    2.    in any such call to induce the purchase of any good or service, the seller or telemarketer:

        a.    allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

        b.    within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by 16 C.F.R. § 310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

            i.    in the case of a call that could be answered in person by a customer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do

1   Not Call request pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(A) at any

2   time during the message.  The mechanism must:

3        (a)     automatically add the number called to the seller's

4                 entity-specific Do Not Call list;

5        (b)     once invoked, immediately disconnect the call; and

6        (c)     be available for use at any time during the message; and

7        ii.     in the case of a call that could be answered by an answering

8   machine or voicemail service, that the person called can use a toll

9   free-number to assert a Do Not Call request pursuant to 16 C.F.R.

10  § 310.4(b)(1)(iii)(A).  The number provided must connect directly

11  to an automated interactive voice or keypress-activated opt-out

12  mechanism that:

13       (a)     automatically adds the number called to the seller's

14                entity-specific Do Not Call list;

15       (b)     immediately thereafter disconnects the call; and is

16                accessible at any time throughout the duration of the

17                telemarketing campaign; and

18       (c)     complies with all other requirements of the Telemarketing

19                Sales Rule and other applicable federal and state laws.

20  *Provided, however*, that if the Commission promulgates rules that modify or supersede the

21  Telemarketing Sales Rule, in whole or part, Defendants shall comply fully and completely with all

22  applicable requirements thereof, on and after the effective date of any such rules.

23  **V.  Prohibitions Regarding Consumer Information**

24       **IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees,

25  and attorneys, and those persons or entities in active concert or participation with any of them who

26  receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise,

27  whether acting directly or through any corporation, subsidiary, division, or other device, are

28  permanently restrained and enjoined from:

1      A.      disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any person which any Defendant obtained prior to entry of this Order in connection with marketing financial related goods or services; and

      B.      failing to dispose of such customer information in all forms in their possession, custody, or control within thirty (30) days after entry of this Order.  Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed.

*Provided, however,* that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## MONETARY RELIEF

### VI.  Monetary Judgment and Partial Conditional Suspension

**IT IS FURTHER ORDERED** that:

      A.      Judgment in the amount of $22,508,306.00 (twenty-two million, five hundred eight thousand, three hundred six dollars) is hereby entered against all Defendants, jointly and severally, as equitable monetary relief.  Such judgment amount is suspended in full as to Defendant Cavender, contingent upon the accuracy and completeness of the Cavender Financial Statements, as set forth in Subsection VI.H.  Such judgment amount is suspended in part as to Defendant Paul Morris Thompson and the Corporate Defendants, contingent upon the accuracy and completeness of the Thompson Financial Statements, set forth in Subsection VI.H, and upon satisfaction of the obligations, and subject to the conditions, set forth in Subsections VI.B-VI.H, including Defendant Thompson's delivery of assets to the Receiver in accordance with Subsection VI.B.

B. **Release of Property to Receiver**:  Defendant Thompson hereby releases to the Receivership Estate any interest he has or might have in those accounts, property, and assets held in the name of Paul M. Thompson which are described below, and in any of the Receivership Defendants, and their affiliates and subsidiaries, including all accounts, property, and assets held in the name of the Receivership Defendants, MCS Holidays, and the Thompson Religious Society, including, without limitation, the following:

1. Bank of America accounts in the name of:

    a. Mutual Consolidation Foundation;

    b. Mutual Consolidated Savings;

    c. Mutual Consolidated Savings Holidays;

    d. United Savings Center, Inc.;

    e. MCS Holidays;

    f. Paul M. Thompson;

    g. Thompson Religious Society I; and

    h. Thompson Religious Society II;

2. Monterey County Bank accounts in the name of United Savings Center, Inc.;

3. Bank of the West account in the name of Mutual Consolidated Savings;

4. JP Morgan Chase accounts in the name of Paul M. Thompson;

5. Merchant accounts containing credit card deposits with credit card processors who provided services to Defendants, including:

    a. First Data;

    b. CardFlex Financial Services;

    c. Paygea Israel Ltd; and

    d. American Verification Processing Solutions;

6. Bank of America Certificate of Deposit, used as collateral for Line of Credit with First Data;

7. Financial instruments held at Morgan Stanley Smith Barney in Tacoma, Washington, in the name of Paul Thompson or United Savings Center, Inc.,

disclosed in the Thompson Financial Statements, including without limitation a SunAmerica Deferred Variable Annuity, an ING USA Deferred Variable Annuity, and an Investment Retirement Account ("IRA").

8. The real property located at 1215 Earnest S. Brazill Street, Unit 33, Tacoma, Washington 98405, the legal description of which is attached hereto as Exhibit A;

9. A mobile home, currently located at 3011 80th Street Court South #50, Lakewood, Washington, which is subject to Washington vehicle title laws; and

10. The following vehicles listed on the Thompson Financial Statements, Item 21:

1989   GMC Sierra Pickup;

1998   Suzuki Marauder Motorcycle;

1983   28-foot Honey Bee Recreational Vehicle; and

1984   21-foot Bayliner Boat and EzLoadr Trailer.

C. All property listed in Subsection VI.B is deemed to be, and is decreed to be as of the date of this Final Order, assets of the Receivership Estate, to be disposed of by the Receiver subject to the terms of this Final Order.  Effective as of the date of this Final Order, none of the Individual Defendants shall have any right, title or interest in any of such property.  Defendant Thompson and all other Defendants shall cooperate with the Receiver by signing, upon the Receiver's request, any documents deemed necessary by the Receiver or his counsel to complete or confirm the transfers effectuated by this Subsection.  Within five days of entry of this Order, Defendant Thompson shall deliver to the receiver all title documents for the mobile home and vehicles listed above in Subsections VI.B.9 and VI.B.10.

D. **Receiver's Sale of Assets**:  Within a time period agreed to by the Commission and the Receiver ("Time Period for Sale"), the Receiver shall sell or liquidate the Receivership Defendants' assets and all other assets released to the Receiver pursuant to this Section to any interested bona fide third-party buyer for value, who is not a Defendant as defined herein.  Any sale of the Receivership Defendants' assets and other assets

1     released to the Receiver shall be complete and closed within the Time Period for Sale.

2     All proceeds due under the sale, net of reasonable fees and expenses (including

3     reasonable attorneys fees and expenses) incurred in connection with the sale and any

4     other liabilities required to be paid consistent with the terms of such sale, shall be treated

5     in the manner described below in this Section VI.

6     E.     **Proceeds of Sale to Commission**: Proceeds from the sale of the Receivership

7     Defendants' assets and the balances held in Receivership Defendants' accounts, as well

8     as proceeds from the sale of any other property released to and sold by the Receiver in

9     this matter, shall be paid to the Commission pursuant to this Order, and shall be credited

10     against the amount of the judgment owed by Defendant Thompson and the Corporate

11     Defendants as set forth in Subsection VI.A, ***provided,*** that the Receiver may deduct his

12     costs and fees as approved by the Court.

13     F.     **Funds deposited to redress fund**: All funds paid pursuant to this Order shall be

14     deposited into a fund administered by the Commission or its agent to be used for

15     equitable relief, including, but not limited to, consumer redress, and any attendant

16     expenses for the administration of any redress fund.  Defendants shall cooperate fully to

17     assist the Commission in identifying consumers who may be entitled to redress pursuant

18     to this Order.  In the event that direct redress to consumers is wholly or partially

19     impracticable or funds remain after redress is completed, the Commission may apply

20     any remaining funds for such other equitable relief (including consumer information

21     remedies) as it determines to be reasonably related to Defendants' practices alleged in

22     the Complaint.  Any funds not used for such equitable relief shall be deposited to the

23     United States Treasury as disgorgement. Defendants shall have no right to challenge the

24     Commission's choice of remedies under this Section, and shall have no right to contest

25     the manner of distribution chosen by the Commission.  This judgment for equitable

26     monetary relief is solely remedial in nature and is not a fine, penalty, punitive

27     assessment or forfeiture.

28

**STIPULATED FINAL JUDGMENT & PERMANENT INJUNCTION**

G. **Defendants relinquish control of funds paid.**  Defendants relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law.  Defendants shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

H. **Right to Re-Open Suspended Judgment**:

1. The Commission's agreement to this Order is expressly premised upon the truthfulness, accuracy, and completeness of the Cavender Financial Statements and the Thompson Financial Statements.  Each Individual Defendant stipulates that his or her Financial Statement is truthful, accurate, and complete. Defendants and the Commission stipulate that these financial disclosures provide the basis for the assets listed above and include material information upon which the Commission relied in negotiating and agreeing to this Order.  Defendants and the Commission stipulate that the Commission has relied on the truthfulness, accuracy, and completeness of these financial disclosures in agreeing to the terms of this Order and the Commission would not have entered into this Order but for the truthfulness, accuracy, and completeness of these financial disclosures.

2. If, upon motion by the Commission, the Court finds that a Defendant has failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial disclosures, then this Order shall be reopened and suspension of the judgment set forth in Subsection VI.A shall be lifted for the purpose of requiring payment of monetary relief in the amount of twenty-two million, five hundred eight thousand, three hundred six dollars ($22,508,306.00), less the sum of any amounts paid to the Commission pursuant to Subsection VI.B, VI.D, or VI.E, of this Section VI and any other payments made by other Defendants.  *Provided however,* that in all other respects this Order shall remain in full force and effect, unless otherwise ordered by the Court.

3.   Upon any reinstatement of the monetary judgment, the Court shall make an express determination that the monetary judgment shall be immediately due and payable.  The Commission shall be entitled to interest on the judgment, computed from day of entry of this Order, at the rate prescribed by 18 U.S.C. § 1961, as amended, on any outstanding amounts not paid.  The Commission shall be permitted to execute on the judgment immediately after the suspension is lifted and engage in discovery in aid of execution;

4.   Defendants agree that the facts as alleged in the Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission to enforce its rights to any payment or money judgment pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy case.  Defendants further stipulate and agree that the facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel effect for such purposes.

I.   Proceedings instituted under this Section are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Commission may initiate to enforce this Order.

J.   The asset freeze ordered previously in this matter is modified to permit the payments and transfers to the Commission described above in this monetary judgment section, and the asset freeze shall be dissolved upon completion of those payments and transfers.

### VII.  Completion of Receivership

**IT IS FURTHER ORDERED** that Michael A. Grassmueck and Grassmueck Group, previously appointed Receiver by this Court's Preliminary Injunction and Order for Other Equitable Relief entered on July 13, 2009, is hereby appointed Receiver for the Corporate Defendants for the purpose of taking the necessary steps to wind down the businesses of the Corporate Defendants, liquidate their assets, and pay any net assets to the FTC to satisfy the monetary judgment entered by

this Order. The Receiver shall be the agent of this Court and shall be accountable directly to this Court.
In carrying out these duties, the Receiver is authorized and directed to:

A.    Take any and all steps that the Receiver concludes are appropriate to wind down the Corporate Defendants;

B.    Take any and all steps necessary or advisable to locate and liquidate all assets of the Corporate Defendants, cancel the Corporate Defendants' contracts, collect on amounts owed to the Corporate Defendants, and take such other steps as may be necessary to terminate and dissolve the Corporate Defendants efficiently;

C.    Provide the FTC, upon request, with any business records of the Corporate Defendants that (i) identify customers from whom the Corporate Defendants collected payments, including the most recent known address and telephone number, and the amount of any fees paid by such customers; and (ii) identify customers who received refunds from the Corporate Defendants and the amount of the refunds;

D.    Continue to exercise full control of the Corporate Defendants and continue to collect, marshal, and take custody, control and possession of all the funds, property, premises, accounts, documents, mail and other assets of, or in the possession or under the control of, the Corporate Defendants, wherever situated, the income and profits therefrom, and all sums of money now or hereafter due or owing to the Corporate Defendants, with full power to collect, receive and take possession of all goods, chattels, rights, credits, monies, effects, lands, leases, books and records, limited partnership records, work papers, and records of accounts, including computer-maintained information, contracts, financial records, monies on hand in banks and other financial institutions, and other papers and documents of other individuals, partnerships or corporations whose interests are now held by or under the direction, possession, custody or control of the Corporate Defendants (collectively, the "Receivership Estate");

E.    Dispose of, or arrange for the disposal of, the records of the Corporate Defendants no later than six months after the Court's approval of the Receiver's Liquidation Report, except that:

1.   To the extent that such records are reasonably available, the Receiver shall arrange for records sufficient to ascertain the funds that an individual consumer paid to the Corporate Defendants, and any refunds provided to individual consumers, to be retained for a minimum of one year from the entry of this Order, and

2.   If state or local law regulating the Corporate Defendants' business requires the retention of particular records for a specified period, the Receiver shall arrange for such records to be disposed of after the specified period has expired.

To safeguard the privacy of consumers, records containing personal financial information shall be shredded, incinerated, or otherwise disposed of in a secure manner. For records that must be retained, the Receiver may elect to retain records in their original form, or to retain photographic or electronic copies;

F.   Continue to perform all acts necessary or advisable to complete an accounting of the assets, and prevent unauthorized transfer, withdrawal, or misapplication of assets;

G.   Make payments and disbursements from the Corporate Defendants' estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Corporate Defendants prior to the date of entry of the temporary restraining order in this action, except payments that the Receiver deems necessary or advisable to secure and liquidate assets of the Corporate Defendants, such as rental payments or payment of liens;

H.   Enter into contracts and purchase insurance as advisable or necessary;

I.   Perform all incidental acts that the Receiver deems to be advisable or necessary, which include retaining, hiring, or dismissing any employees, independent contractors, and agents as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the statutory authority granted by this Order;

J.   Continue to institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings

1    as the Receiver deems necessary and advisable to carry out the Receiver's mandate

2    under this Order, including, but not limited to, actions challenging fraudulent or

3    voidable transfers;

4    K.    Continue to defend, compromise, adjust, or otherwise dispose of any or all actions or

5          proceedings instituted in the past or in the future against the Receiver in his role as

6          Receiver, or against the Corporate Defendants, as the Receiver deems necessary and

7          advisable to carry out the Receiver's mandate under this Order;

8    L.    Issue subpoenas to obtain documents and records pertaining to the Receivership, and

9          conduct discovery in this action on behalf of the Receivership estate;

10   M.    Continue to maintain one or more bank accounts as designated depositories for funds of

11         the Corporate Defendants not disbursed to the FTC pursuant to Section IV of this Order,

12         and make all payments and disbursements from the Receivership Estate from such an

13         account. The Receiver shall serve copies of monthly account statements on all parties;

14   N.    Continue to maintain accurate records of all receipts and expenditures that he makes as

15         Receiver; and

16   O.    Continue to cooperate with reasonable requests for information or assistance from any

17         state or federal law enforcement agency.

18

19                        **VIII.  COMPENSATION OF RECEIVER**

20         **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver,

21   including counsel to the Receiver and accountants, are entitled to reasonable compensation for

22   the performance of duties pursuant to this Order and for the cost of actual out-of-pocket

23   expenses incurred by them, from the assets now held by, in the possession or control of, or which

24   may be received by, the Corporate Defendants.  The Receiver must not increase the hourly rates

25   used as the bases for such fee applications without prior approval of the Court.

26

27

28

**IX.  RECEIVER'S LIQUIDATION REPORT AND DISBURSEMENT**

**OF ASSETS OF THE CORPORATE DEFENDANTS**

IT IS FURTHER ORDERED that:

A.  The Receiver shall, as directed in Section VI of this Order, liquidate the assets of the Corporate Defendants as soon as practicable.  No later than sixty (60) days from the date of the entry of this Order, the Receiver shall file and serve on the parties a report (the "Liquidation Report") to the Court that details the steps taken to dissolve the Receivership Estate.  The Liquidation Report must include an accounting of the Receivership Estate's finances and total assets and a description of what other actions, if any, must be taken to wind-down the Receivership.  Promptly thereafter, but no later than thirty (30) days after submission of the Liquidation Report, the Receiver shall file an application for payment of compensation and expenses associated with his performance of duties as Receiver under this Order and under the Temporary Restraining Order and the Stipulated Preliminary Injunction entered in this proceeding. The Receiver shall mail copies of the Liquidation Report to all known creditors of the Corporate Defendants with a notice stating that any objections to paying any assets of the Corporate Defendants to satisfy the Receiver's costs and expenses and the monetary judgment set forth in this Order must be submitted to the Court and served by mail upon the Receiver and the parties within thirty days of the mailing of the Liquidation Report. If subsequent actions (such as completing the liquidation of assets, completing tax returns or further actions to recover funds for the Receivership) are appropriate, the Receiver shall file an additional report or reports ("Supplemental Reports") describing the subsequent actions and a subsequent application for the payment of fees and expenses related to the subsequent acts.

B.  The Court will review the Liquidation Report and any objections to the report and, absent a valid objection, will issue an order directing the Receiver to:

1.  Pay the reasonable costs and expenses of administering the Receivership, including compensation of the Receiver and the Receiver's personnel authorized

FEDERAL TRADE COMMISSION
915 Second Ave., Su. 2896
Seattle, Washington 98174
(206) 220-6350

by Section VII of this Order or other orders of this Court, and the actual out-of-pocket costs incurred by the Receiver in carrying-out his duties;

2.      Pay all remaining funds to the FTC, as directed in Section VI of this Order as partial satisfaction of the judgment; and

C.      With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a Supplemental Report.  If the Receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve fund after the payments of fees and expenses approved by the Court in response to such a supplemental application, all funds remaining in the reserve fund shall be immediately paid to the FTC or its designated agent.

## X.  TERMINATION OF THE RECEIVERSHIP

**IT IS FURTHER ORDERED** that upon completion by the Receiver of the tasks set forth in this Order, the Receivership over the Corporate Defendants in this matter be dissolved and the Receiver discharged.

## COMPLIANCE

## XI.  Compliance Monitoring

**IT IS FURTHER ORDERED** that, for the purpose of (i) monitoring and investigating compliance with any provision of this Order, and (ii) investigating the accuracy of any Defendant's financial statements, upon which the Commission's agreement to this Order is expressly premised:

A.      Within ten (10) days of receipt of written notice from a representative of the Commission, Defendants each shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in each Defendant's possession or direct or indirect control to inspect the business operation;

B.      In addition, the Commission is authorized to use all other lawful means, including but not limited to:

1.      obtaining discovery from any person, without further leave of court, using the

procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

2.      having its representatives pose as consumers and suppliers to Defendants, their

employees, or any other entity managed or controlled in whole or in part by any

Defendant, without the necessity of identification or prior notice; and

C.      Defendants each shall permit representatives of the Commission to interview any

employer, consultant, independent contractor, representative, agent, or employee who

has agreed to such an interview, relating in any way to any conduct subject to this Order.

The person interviewed may have counsel present.

***Provided however***, that nothing in this Order shall limit the Commission's lawful use of compulsory

process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any

documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or

practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## XII.  Compliance Reporting

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order

may be monitored:

A.      For a period of five (5) years from the date of entry of this Order,

1.      Each Individual Defendant shall notify the Commission of the following:

a.      Any changes in such Defendant's residence, mailing addresses, and

telephone numbers, within ten (10) days of the date of such change;

b.      Any changes in such Defendant's employment status (including self-

employment), and any change in such Defendant's ownership in any

business entity within ten (10) days of the date of such change.  Such

notice shall include the name and address of each business that such

Defendant is affiliated with, employed by, creates or forms, or performs

services for; a detailed description of the nature of the business; and a

detailed description of such Defendant's duties and responsibilities in

connection with the business or employment; and

c.  Any changes in such Defendant's name or use of any aliases or fictitious names within ten (10) days of the date of such change;

2.  Defendants shall notify the Commission of any changes in structure of any Corporate Defendant or any business entity that any Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to:  incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, ***provided that***, with respect to any such change in the business entity about which a Defendant learns less than thirty (30) days prior to the date such action is to take place, such Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.  One hundred eighty (180) days after the date of entry of this Order and annually thereafter for a period of five (5) years, Defendants each shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.  This report shall include, but not be limited to:

1.  For each Individual Defendant:

a.  Such Defendant's then-current residence address, mailing addresses, and telephone numbers;

b.  Such Defendant's then-current employment status (including self-employment), including the name, addresses, and telephone numbers of each business that such Defendant is affiliated with, employed by, or performs services for; a detailed description of the nature of the business; and a detailed description of such Defendant's duties and responsibilities in connection with the business or employment; and

c.      Any other changes required to be reported under Subsection A of this Section.

2.      For all Defendants:

a.      A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section entitled, "Distribution of Order"; and

b.      Any other changes required to be reported under Subsection A of this Section.

C.      Each Defendant shall notify the Commission of the filing of a bankruptcy petition by such Defendant within fifteen (15) days of filing.

D.      For the purposes of this Order, Defendants shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier all reports and notifications required by this Order to the Commission, to the following address:

Associate Director for Enforcement

Federal Trade Commission

600 Pennsylvania Avenue, N.W.

Washington, D.C.  20580

Re:  *FTC v. MCS Programs, LLC, et al,* Civil No.  C09-5380RBL,

Matter No. X090066

*Provided* that in lieu of overnight courier, Defendants may send such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Commission at: DEBrief@ftc.gov.

E.      For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with each Defendant. *Provided however,* nothing in this provision shall limit the Commission's authority to pose as a consumer or supplier pursuant to the Subsection XI.B.2 of the Section titled "Compliance Monitoring."

## XIII.  Recordkeeping

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Corporate Defendants and Individual Defendants, for any business for which they, individually or collectively, are the majority owner or directly or indirectly control, are hereby restrained and enjoined from failing to create and retain the following records:

A.    Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.    Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.    Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.    Complaints and refund requests (whether received directly or indirectly, such as through a third party) and any responses to those complaints or requests;

E.    Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F.    All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## XIV.  Distribution of Order

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of the Order as directed below:

A.    **Corporate Defendant**:  Each Corporate Defendant must deliver a copy of this Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents,

and representatives who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting."  For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant.  For new personnel, delivery shall occur prior to them assuming their responsibilities.  For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

B.    **Individual Defendant as control person**:  For any business that an Individual Defendant controls, directly or indirectly, or in which such Defendant has a majority ownership interest, such Defendant must deliver a copy of this Order to (1) all principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting."  For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant.  For new personnel, delivery shall occur prior to them assuming their responsibilities.  For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

C.    **Individual Defendant as employee or non-control person**:  For any business where an Individual Defendant is not a controlling person of a business but otherwise engages in conduct related to the subject matter of this Order, such Defendant must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

D.    Defendants must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

### XV.  Acknowledgment of Receipt of Order

**IT IS FURTHER ORDERED** that each Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

### XVI.  Retention of Jurisdiction

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

Stipulated by:

**PLAINTIFF**                                                **ATTORNEYS FOR Corporate Defendants and Paul Morris Thompson**:

/s/
MAXINE R. STANSELL WSBA # 9418
ELEANOR DURHAM Member MD Bar            /s/
Attorneys for Plaintiff                                 JOHN MATTHEW ENNIS WSBA # 6686
Federal Trade Commission                          HAGER & ENNIS
(206) 220-6350 Fax: (206) 220-6366         Local Counsel for United Savings Center, Inc.,
mstansell@ftc.gov; edurham@ftc.gov       USC Programs, LLC, and Paul Morris Thompson
                                                                6314 19th St W, Ste 12, Tacoma, WA 98466
                                                                (253) 565-5544 Fax: (253) 565-5544
**DEFENDANTS**                                         jmennis@qwestoffice.net

/s/
Miranda L. Cavender, Defendant *pro se*      /s/
1639 S. 96th St, Tacoma, WA 98444           HECTOR E. LORA
(253) 503-7229                                          COVE & ASSOCIATES
mirandacavender@yahoo.com                      Lead Counsel for United Savings Center, Inc.,
                                                                USC Programs, LLC, and Paul Morris Thompson
                                                                225 South 21st Avenue, Hollywood, FL 33020
                                                                (954) 921-1121 Fax: (954) 921-1621
/s/                                                              hel@covelaw.com
Paul Morris Thompson, Defendant

**SO ORDERED**.

DATED this 19th day of July, 2010.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE